**UNITED STATES DISTRICT COURT**
**DISTRICT OF MASSACHUSETTS**

|  |  |  |
|---|---|---|
| AUGUSTA COOKS, on behalf of himself and all others similarly situated, | ) ) ) ) ) | |
| Plaintiffs, | ) ) | Civil Action No. 13-cv-11802-WGY |
| v. | ) ) ) | |
| COVERALL NORTH AMERICA, INC., and COVERALL OF BOSTON, INC., | ) ) ) | |
| Defendants. | ) ) | |

**PLAINTIFFS' REPLY IN SUPPORT OF THEIR**
**MOTION FOR CLASS CERTIFICATION**

Despite the fact that Plaintiffs are simply seeking now in this case damages for class members from the case of Awuah et al. v. Coverall North America, Inc., C.A. No. 07-10287, for the period following July 2010 (when the Court cut off damages, based on Coverall's representations that it had made changes as of that date), Coverall attempts to defeat class certification in this case by claiming it is a different case from Awuah. It is not a different case from Awuah. Coverall may have new clever arguments it will attempt to raise to explain why it should no longer be liable after July 2010, as the Court held it to be liable in Awuah, and Plaintiffs intend to show the Court why those arguments do not change anything. But the question as to whether Coverall is still liable for the period after July 2010 is, like in Awuah, a question that can and should be answered on a classwide basis.

1

Coverall does not dispute that there are 38 class members from Awuah who continued working as Coverall "franchisees" after July 2010[1], and Coverall does not dispute that its "franchisees" have continued to pay franchise fees, additional business fees, and insurance payments, just like they had previously.  Thus, the issue for the class Plaintiffs now seek is whether Coverall's new timekeeping system and method of payment that it attempted to implement in July 2010 relieve it of liability[2] or whether its incorporation of the Boston office as a separate corporation from Coverall North America[3] makes any difference to its liability.[4]

---

[1]    As Coverall also admits, these class members are not subject to arbitration agreements.

[2]    Coverall claims that it set up a system as of July 2010 whereby workers were to input their hours into a computer system and then they would be paid minimum wage on a biweekly basis based on those hours, with the remainder of the amounts owed to them under their franchise agreements to be paid on a monthly basis as before.  Thus, Coverall contends that only the minimum hourly wages the workers receive count as "wages" and the remainder that the workers received (as they always had) in their monthly statement is not "wages", so that Coverall is free to make deductions from this amount.  Plaintiffs dispute that the amounts paid with the monthly statements are not wages, and in any event, the SJC held in the Awuah case that payments made by the workers held to be unlawful are violations of the Wage Act, regardless of whether they are deducted from a paycheck, or paid out of the worker's pocket; as a result of that ruling, this Court had the parties calculate damages to include amounts paid up front by the class members, not just amounts deducted from their monthly pay.  Thus, this new system does nothing to relieve Coverall of liability.  (And, in any event, Coverall's Vice President of Operational Development, Shirley Klein, testified recently that most workers were not using this system, and that, up until fall of 2013, if they did not input their hours into the system, they did not receive a biweekly paycheck.)

[3]    Although Coverall of Boston has incorporated as a separate entity, business decisions regarding how the Coverall workers are paid are still being made by Coverall North America, as confirmed by Shirley Klein in her recent deposition.

[4]    Coverall also contends that its Boston office no longer sells new franchises to individuals who have not formed corporations or LLCs, but it admits that it still has "franchisees" from before July 2010 who have not done this.  As with the Awuah class, some "franchisees" had formed corporations or LLCs, and others had not, and this did not make a difference as to whether they had been misclassified or not.  Like this Court in Awuah, other courts have rejected the argument that the formation of a corporation or LLC determines whether or not a worker has been misclassified as an independent contractor in violation of Mass. Gen. L. c. 149 § 148B.  See Martins v. 3PD, Inc., 2013 WL 1320454, *16 (D. Mass. Mar. 28, 2013) (Woodlock, J.); Amero v. Townsend Oil Co., 2008 WL 5609064, *3 (Mass. Super. Dec. 3, 2008) (Murtagh, J.) ("If incorporation alone sufficed to transform an employee into an independent contractor, many employers would require that their employees do just that, and thereby exempt themselves from the requirements of the law.").  See also Depianti v. Jan-Pro Franchising International, Inc., 465 Mass. 607,

Coverall raises red herrings, such as that the question of whether class members worked overtime, or whether they received less than minimum wage, will differ among class members. Of course, individual differences in calculating the amount of damages does not defeat class certification. However, as the Court is aware, Plaintiffs in <u>Awuah</u>, like here, have not even sought to measure their damages based on overtime or minimum wage calculations. Instead, Plaintiffs in <u>Awuah</u> contended successfully that their Wage Act damages consisted of fees they had to pay for their franchises and additional business, as well as other payments such as insurance. As in <u>Awuah</u>, calculating what these amounts are for this class will be a simple ministerial matter based on Coverall's electronic records, just as it was in <u>Awuah</u> (and just as the parties were able to agree on the damage amounts in <u>Awuah</u> based on the Court's rulings of what damages were recoverable, Plaintiffs expect the same will apply here).

Coverall raises other arguments as well that it lost in the <u>Awuah</u> case, and there is no reason for the Court to deviate from its prior rulings in that case. For example, Coverall argues that some "franchisees" had other workers help them, and thus there are individualized issues regarding which class members had other workers help them. However, the same was true in the <u>Awuah</u> case, and the Court correctly rejected this argument. Likewise, Coverall argues that there will be individualized issues regarding whether class members "benefitted" from the insurance they were charged for by Coverall. This argument was likewise correctly rejected by this Court in <u>Awuah</u>. The SJC held unequivocally in <u>Awuah v. Coverall</u>, 460 Mass. 484 (2011), that the workers

---

623-24 (2013) (an employer cannot avoid liability under the Independent Contractor Law by contracting for an employee's services through an intermediary entity).

3

could not be charged for insurance, both the workers compensation-like insurance that Coverall charges, as well as the other types of insurance Coverall charges. The SJC did not qualify the circumstances in which such insurance would be recoverable, and this Court correctly included these insurance payments in the damages in Awuah.

Coverall even argues in its opposition that there is no need to certify a class in this case because the class members are already class members in Awuah who have already been adjudicated to have been misclassified. However, this argument ignores the fact that the Court cut off damages for those class members as of July 2010. Thus, there is a need to certify the class in this case so that those class members can seek recovery of their damages for the period after this date.

In short, this case is simply a tag-along action to Awuah, and Plaintiffs are seeking here to certify a class so as to recover damages for the Awuah class members for wage violations that Coverall continued to commit after July 2010. The Court should certify this case as a class action, and the next step will be for the Court to consider whether Coverall's new defenses it has raised for the period after July 2010 change anything from the result reached in Awuah.[5]

---

[5] The Court has endorsed the parties' recent proposal that summary judgment motions will be due on March 14, 2014. A trial is scheduled for May, but, as in Awuah, Plaintiffs do not expect that a trial will be necessary, as the issues in the case are legal issues to be decided by the Court, and, based on the Court's rulings, damages can be calculated on a ministerial basis.

        Respectfully submitted,

        AUGUSTA COOKS, on behalf of himself and all others similarly situated,

        By their attorneys,

        /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan, BBO #640716
        Elizabeth Tully, BBO # 685855
        LICHTEN & LISS-RIORDAN, P.C.
        100 Cambridge Street, 20th Floor
        Boston, MA 02114
        (617) 994-5800

Dated: February 5, 2014

## CERTIFICATE OF SERVICE

    I hereby certify that on February 5, 2014, a copy of this document was served by electronic filing on all counsel of record.

        /s/ Shannon Liss-Riordan
        Shannon Liss-Riordan, Esq.